[Cite as *In re N.S.*, 2023-Ohio-3983.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE N.S., ET AL.

Minor Children

[Appeal by Mother]

:
:
:
:
:

No. 112747

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 2, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-20904687 and AD-20904688

---

### *Appearances:*

Michael E. Stinn, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother ("Mother") appeals from the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, granting permanent custody of her minor children, N.S. and D.J., to appellee, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "Agency"). For the reasons that follow, we affirm the juvenile court's judgment.

**Factual and Procedural History**

{¶ 2} On May 12, 2020, CCDCFS filed a complaint alleging that N.S., born April 14, 2020, and D.J., born September 17, 2017, were neglected children as defined by R.C. 2151.03(A)(2) and that N.S. was an abused child as defined by R.C. 2151.031(D). The complaint averred, in part, the following particulars:

1. Mother has a drug abuse issue, specifically cocaine and marijuana. On April 14, 2020, mother and child N.S. tested positive for cocaine and marijuana. Mother also tested positive during her pregnancy for the same substances. Mother's drug abuse issue prevents her from providing appropriate care for the children.

2. Mother has a mental health issue, specifically anxiety and depression, which prevents her from providing appropriate care for the children. Mother has not addressed her mental health issue.

3. Alleged father of D.J. and N.S., John Doe, has failed to establish paternity and has failed to support, visit, or communicate with the children since birth.

{¶ 3} Along with the complaint, CCDCFS filed a motion for predispositional temporary custody of the children to the agency.

{¶ 4} Mother attended a hearing on June 10, 2020. At that time, she signed a waiver of the 90-day statutory time and entered the juvenile court's drug court program. On September 2, 2020, the agency filed an amended complaint. CCDCFS alleged that the children were dependent and requested that the children remain in the legal custody of Mother while under court-ordered protective supervision. The adjudicatory hearing was held on September 4, 2020, and ratified on September 21, 2020. The juvenile court adjudicated the children dependent and placed them in the legal custody of Mother. The original order did not include protective

supervision; however, a nunc pro tunc entry dated November 4, 2020, corrected the journal entry to reflect the decision made at the hearing and added protective supervision to the agency. The agency created a safety plan. The plan required Mother to live with the children's maternal great grandmother so that she could receive support as needed.

{¶ 5} Mother was assigned two social workers, Aimee Collins ("Collins") and Martin O'Sullivan ("O'Sullivan"). They both worked through the agency's Sobriety Treatment and Recovery Team ("START"). Collins was assigned to the case in May 2020; O'Sullivan joined Collins on the case in October 2020. As the primary social worker, Collins created Mother's initial case plan, which called for her to address substance abuse issues, mental health, and housing.

{¶ 6} Between May 2020 and October 2020, Mother entered three substance abuse treatment programs. Mother was referred to Moore Counseling, the Northern Ohio Recovery Association ("NORA"), and the Matt Talbot House. Mother engaged with Moore Counseling and Matt Talbot, but she did not complete the programs. Mother did not engage with NORA during her first referral. Due to Mother's stalled progress the agency filed a motion on November 5, 2020, to modify custody from protective supervision to temporary custody to the agency.

{¶ 7} In November 2020, Collins and O'Sullivan met with Mother at her home. Mother suggested she attend the Hitchcock Center for Women ("Hitchcock"), a residential program with a step-down procedure. At Hitchcock, patients go through several stages. First, they begin in a residential treatment

program.  Then they are stepped down to a partial hospitalization program ("PHP").  Next, they enter an intensive outpatient program ("IOP") followed by outpatient/aftercare.  Finally, a Sober Living program is introduced.  Mother was successfully admitted into Hitchcock.

{¶ 8}  The juvenile court heard the agency's motion to modify custody on November 18, 2020.  Mother stipulated to temporary custody to the agency at the hearing.  Mother did well in the residential treatment program.  She successfully completed the PHP.  However, Mother did not complete the IOP.  Initially, Mother displayed a positive attitude, participated in Family Recovery Court, and completed required 12-step meeting attendance.  She also fully participated in drug screenings.  Towards the end of January 2021, as Mother neared the end of IOP, Mother started missing appointments and drug screens.  Around late February, or early March 2021, Mother started testing positive for drugs.  Mother admitted to using marijuana and alcohol.  Her drug screens showed she was also using cocaine and methamphetamine.  Mother also admitted to using ecstasy one time.

{¶ 9}  The social workers recommended that Mother return to the PHP program at Hitchcock, but Mother refused to comply.  The juvenile court reviewed the case in February 2021 and ordered the agency to find another placement for Mother as soon as possible.  The following day, the agency found an opening at Midwest Recovery, a treatment center similar to Hitchcock, located in Toledo, Ohio.  In addition to substance abuse treatment, Midwest Recovery provided trauma-based mental health counseling.  The program was intended to last six months.  To

facilitate Mother's continued treatment, the agency filed a motion requesting an extension of temporary custody. The juvenile court granted the motion on May 24, 2021.[1]

{¶ 10} Midwest Recovery provided transportation and took Mother to Toledo. As she had done previously, Mother completed the residential portion of the program and three months of PHP. She successfully completed the other stages and entered the Sober Living stage. After completing five months of the program, Mother asked to return to the Cleveland area. Around September 2021, Mother was referred to NORA for their non-intensive outpatient program. On October 21, 2021, the agency filed a motion for a second extension of temporary custody. The juvenile court granted the motion on December 2, 2021. Mother appeared to be doing well and completed the program. On December 16, 2021, based on Mother's perceived progress, the agency moved to place the children back with Mother with agency protective supervision. The juvenile court granted the motion on January 18, 2022.

{¶ 11} However, shortly thereafter, Mother relapsed. Initially, Mother began to miss appointments, drug screenings, and Family Recovery Court. Mother initially denied relapsing when asked. Mother finally submitted to a drug test in February 2022 and Mother tested positive. Mother admitted that she relapsed during the holiday season 2021. The agency obtained another residential treatment placement for Mother starting in either March or April 2022. On April 26, 2022,

---

[1] The original journal entry was issued on April 28, 2021; however, due to clerical errors, a nunc pro tunc entry was issued on May 24, 2021.

the agency filed a motion to place the children back in the temporary custody of the agency. The juvenile court granted the motion on May 16, 2022. Also, in May 2022, Mother was discharged from Family Recovery Court due to three unexcused absences.

{¶ 12} Mother entered the new treatment program at People, Places, and Dreams, an intensive outpatient program. Mother attended sessions sporadically, missed drug screens, and did not complete program requirements. People, Places, and Dreams discharged Mother for noncompliance.

{¶ 13} The agency placed Mother in another residential placement at Ethan Crossing Recovery Center in June 2022. Mother completed the program in August/September 2022 and then transitioned into the Cleveland Sober Living program. Simultaneously, Mother engaged with NORA again for their non-intensive outpatient program. On September 14, 2022, the agency filed a motion to modify temporary custody to permanent custody. Mother completed the NORA program in January 2023.

{¶ 14} The agency subsequently learned that although NORA graduated Mother from the program, she tested positive for cocaine use in November 2022. The agency learned of an additional positive drug screen during that time as well. When asked Mother denied drug usage and volunteered to take a hair analysis test. The test, taken on January 23, 2023, was positive for cocaine and marijuana usage. A hair analysis for drugs establishes that the person tested either used or was

exposed to the drug sometime in the past three months.[2]  Mother continued to submit to drug tests via urinalysis and oral saliva screening.  Mother took six tests between January 25, 2023, and March 20, 2023.  All were negative for drugs.  However, a subsequent hair analysis done on April 10, 2023, was positive for cocaine.

{¶ 15} On April 12, 2023, the guardian ad litem for the children, Mark A. Novak (the "GAL"), filed his report and recommendation.  In it, he discussed conversations with D.J., age five.  D.J. stated she was "ready to go home" to Mother, but then stated she preferred to stay in the foster home.  The GAL noted that D.J. made several contradictory statements during the course of the interview.  The GAL, reviewing all the factors, recommended that the agency receive permanent custody of the children.

{¶ 16} On April 19, 2023, the hearing for permanent custody was held.  Prior to beginning the hearing, Mother's attorney, citing D.J.'s statements to the GAL, requested that the court appoint an attorney for D.J. since her wishes conflicted with the GAL's recommendation.  The juvenile court found that the GAL report was not as clear cut as the attorney described and noted the GAL's reference to D.J.'s contradictory statements.  The court denied the motion and proceeded with the hearing.

---

[2] Dr. Richard Scott Krupkin conducted the analysis and testified at the final custody hearing.

{¶ 17} Subsequently, the juvenile court found that permanent custody to the agency was in the best interest of the children. Mother appeals and assigns the following errors for our review.

## Assignment of Error No. 1

The trial court abused its discretion in denying appellant's motion for continuance.

## Assignment of Error No. 2

The children were denied due process. Both of the children were entitled to independent counsel and counsel was not appointed for them.

## Assignment of Error No. 3

It was not in the children's best interest to be placed in the permanent custody of Cuyahoga County Children and Family Services. The children should have been reunified with their mother with protective supervision.

## Law and Analysis

{¶ 18} In the second assignment of error, Mother argues that both children were entitled to counsel and the trial court violated their right to due process by failing to provide said counsel. In the first assignment of error, Mother argues that the trial court abused its discretion when it refused to grant a continuance so that the court could appoint an attorney to represent D.J.

{¶ 19} Notably, Mother never requested an attorney for N.S. Additionally, Mother did not request a continuance to allow the court to appoint counsel for D.J. Absent plain error, issues not raised before the juvenile court are waived. *In re A.M.*, 2023-Ohio-1523, 213 N.E.3d 1275, ¶ 16. "Plain error review is not favored in civil

cases and is defined in such context as error that 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *In re L.W.*, 2017-Ohio-8433 at ¶ 18, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997) syllabus. Plain error will only be recognized in extremely rare cases with exceptional circumstances. *In re A.D.*, 12th Dist. Clermont No. CA2021-11-060, 2022-Ohio-736, ¶ 17.

{¶ 20} In her brief before this court, Mother has not alleged plain error nor has she engaged in a plain error analysis. An appellate court may disregard an assignment of error where the appellant has failed to construct an argument in support. *Wells Fargo Bank, N.A. v. Kessler*, 10th Dist. Franklin No. 15AP-216, 2015-Ohio-5085, ¶ 13. Accordingly, we will confine our review to determining whether the juvenile court erred when it failed to appoint counsel for D.J. The first assignment of error is therefore overruled.

{¶ 21} Both Sup.R. 48.02(D)(1) and Juv.R. 4(C) address the issue of appointment of counsel for a child in abuse, neglect, and dependency cases when the GAL's recommendation conflicts with the child's wishes.

> A court *shall* appoint a separate attorney to represent a child in abuse, neglect, dependency * * * cases in which the wishes of the child differ from the recommendations of the guardian ad litem.

Sup.R. 48.02 (Emphasis added).

> If a person is serving as a Guardian ad litem for a child or ward, and the court finds a conflict exists between the role of the Guardian ad litem

and the interest or wishes of the child of the ward, the court shall appoint counsel for the child or ward.

Juv.R. 4(C).

{¶ 22} Based on the foregoing, if a conflict exists between the child's wishes and the GAL's recommendation, the juvenile court has no discretion and must appoint counsel for the child. The standard of review when a court has no discretion, is whether the court's decision was erroneous as a matter of law. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 37.

{¶ 23} The decision to appoint independent counsel for a child should be made on a case-by-case basis, determining whether the child actually needs independent counsel and taking the child's maturity into account. *In re K.C.*, 8th Dist. Cuyahoga No. 112556, 2023-Ohio-3160, ¶ 63. Courts have generally found that independent counsel should be appointed when the child has "repeatedly expressed" a desire to be reunited with a parent but the child's GAL takes a contrary position. *Id.* at ¶ 64. However, "'there is no need to consider the appointment of counsel based upon a child's occasional expression of a wish to be reunited with a parent or because of a statement made by an immature child.'" *Id.*, quoting *In re Williams*, 11th Dist. Geauga Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588, ¶ 24.

{¶ 24} At the time of the permanent custody hearing, D.J. was five years old. Of the four-GAL reports in the record, D.J. expressed a desire to return to Mother in one. Granted during the first two reports, the children were in Mother's custody. Nevertheless, the single statement in the final report does not establish that D.J.

repeatedly expressed a desire for reunification with her Mother. In the same interview, D.J. expressed a desire to remain in her foster home. She also told the GAL that her three-year-old sister was six months old and that she had only been with the foster mother for two days rather than several months. Noting that it had reviewed the GAL report, the juvenile court denied the motion. Based on the foregoing, the record does not establish a conflict between D.J.'s wishes and the GAL's recommendation. D.J. merely stated that she liked both options. She expressed a desire to be with her Mother and a desire to stay in the foster home. There was no clear conflict between D.J.'s statements and the GAL's recommendation. The juvenile court's decision was not erroneous as a matter of law.

{¶ 25} Accordingly, the second assignment of error is overruled.

{¶ 26} In the third assignment of error, Mother alleges that placing the children in the permanent custody of the agency was not in the best interest of the children. Mother cites her recent successes in substance abuse and mental health treatment, and family and community support, as evidence that permanent custody was not in the best interest of the children.

{¶ 27} Preliminarily, we note that it is well established that a parent has a fundamental right to raise and care for their child. *In re R.S.*, 8th Dist. Cuyahoga No. 111353, 2022-Ohio-4387, ¶ 32 citing *In re C.F.*, 113 Ohio St. 3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28; *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 40. Further, it has long been recognized that the termination of

parental rights is "'the family equivalent of the death penalty in a criminal case.'" *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14 citing *In re Hayes*, 79 Ohio St.3d. 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

{¶ 28} Nevertheless, permanent custody is appropriate "when necessary for the welfare of the child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 645 N.E.2d 812 (9th Dist.1994). Ultimately, the goal is to create "a more stable life for the dependent children" and to "facilitate adoption to foster permanency for children." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860 (Aug. 1, 1986).

{¶ 29} The requirements for the termination of parental rights are set out in R.C. 2151.414. *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. Courts must apply a two-part test when deciding whether to award permanent custody to a public services agency. R.C. 2151.414.

**First Prong: R.C. 2151.414(B)(1)(a)-(e)**

{¶ 30} Under the first prong, the juvenile court must determine by clear and convincing evidence, that any of the following five factors apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1)

of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 31} In the instant case, the juvenile court found, pursuant to R.C. 2151.414(B)(1)(a), the children could not be placed with either parent within a reasonable time or should not be placed with either parent.[3]

{¶ 32} A juvenile court must consider the factors outlined in R.C. 2151.414(E) when determining whether a child cannot be placed with either of their parents within a reasonable time. *In re A.V.*, 8th Dist. Cuyahoga No. 101391, 2014-Ohio-5348, ¶ 58. The court must only make this finding if it finds by clear and

---

[3] The court also found that the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. Mother did not challenge this finding.

convincing evidence that one or more of the factors listed in R.C. 2151.414(E) exist.

Here, the juvenile court found that R.C. 2151.414(E)(1) and (2) applies as follows:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be removed from the parents, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing.

{¶ 33} Specifically, the juvenile court found:

The mother has attempted treatment nine separate times since the birth of N.S. three years ago. There was extensive trial testimony about mother's extensive treatment history. The testimony also established that she relapsed in November 2022 and had two separate hair screens in January 2023 and April 2023 that were positive for cocaine and marijuana. The mother has not addressed the conditions for removal and has not completed her case plan. Her chronic chemical dependency makes the mother unable to be reunified with her children at the present time and no further extensions of temporary custody are available to the court.

No fathers have been identified or come forward to establish paternity.

{¶ 34} The juvenile court's findings above are supported by clear and convincing evidence. Although Mother has diligently engaged in drug treatment services, the record established a repeated history of relapse. At the time of the permanent custody hearing, in addition to Mother's treatment history, there was undisputed evidence that Mother had allowed a friend to move into her home who admitted to regular marijuana usage.

{¶ 35} Given the foregoing, the record clearly demonstrates that the children could not be placed with Mother within a reasonable time or should not be placed with Mother.

{¶ 36} The juvenile court's findings under the first prong are supported by clear and convincing evidence. Finding no error with the juvenile court's findings under the first prong, we consider the court's findings under the second prong.

## Second Prong:   R.C. 2151.414(D)

{¶ 37} Under the second prong, the juvenile court must find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. This decision is reviewed under the abuse of discretion standard. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. "A trial court's failure to base its decision on a consideration of the best interests of the child constitutes an abuse of discretion." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 60 citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

{¶ 38} A court must consider all of the following factors, but is not limited to these factors, when determining the best interest of the child:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2141.414(D)(1)(a) through (e).

{¶ 39} The juvenile court found that factors (a), (c) and (d) weighed heavily in favor of permanent custody. With respect to those factors, the court found:

When the children were first removed, they were placed with their maternal great grandmother. They were reunified with the mother for approximately one month before being removed again and placed with their same maternal great grandmother. Then the children were placed with a maternal aunt for three days and then she asked for their removal. The children were then placed with their current foster mother and have resided with her since. The children have experienced five moves over the course of this case, and they deserve permanency.

Since the birth of N.S. both children have been involved with CCDCFS. This matter was officially opened in May 2020 almost three years ago. There have been two extensions of temporary custody and further extensions of temporary custody are not legally an option.

The only options before the court are immediate reunification and permanent custody as temporary custody has been extended, reunification has already been attempted, the court cannot find that reunification is in the child's best interest.

{¶ 40} In the instant case, not only did the court make the above findings, the court also found that all the elements of R.C. 2151.414(D)(2) applied. When all

those elements are found, the juvenile court "shall commit the child to the permanent custody of a public children services agency." Those findings are as follows:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

R.C. 2151.414(D)(2)(a) through (d).

{¶ 41} While the court's determination under R.C. 2151.414(D)(1) is reviewed under an abuse-of-discretion standard, the juvenile court has no discretion if it finds that all the factors in R.C. 2151.414(D)(2) are present. The standard of review when a court has no discretion is whether the court's decision was erroneous as a matter of law. *Johnson*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 37.

{¶ 42} We have already reviewed the court's findings under R.C. 2151.414(E) and determined they are supported by clear and convincing evidence, and it is undisputed that the children had been in the agency's custody for two years or longer. With respect to division (c), a planned permanent living arrangement

requires a finding that the child is sixteen years of age or older, and therefore the children do not qualify. The final requirement, that no relative or other person has filed for or been identified in a motion for legal custody, needs to be addressed.

{¶ 43} The record does not reflect that any person filed a motion for legal custody. However, Collins testified that she identified several interested persons who might take custody of the children. Preliminarily, the agency looked at the maternal great grandmother; however, she did not feel able, at age 90, to provide long-term care for the children. The agency also evaluated the children's grandfather, D.S., and a maternal aunt J.D. Both were approved as placements. However, they both subsequently changed their minds and did not want to be considered for placement. Another person, a family friend, expressed an interest in taking custody of the children. Due to a variety of issues, the agency was unable to approve her for custody. Finally, a 19-year-old cousin expressed an interest in custody. However, she did not have stable housing. At the time of the permanent custody hearing, she was still looking for stable housing. Based on the foregoing, the juvenile court's decision that permanent custody was in the best interest of the children was not erroneous as a matter of law.

{¶ 44} Accordingly, the third assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
SEAN C. GALLAGHER, J., CONCUR