[Cite as *In re JF*, 2024-Ohio-3311.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE  J.F. | : | |
| | | No. 113778 |
| A Minor Child | : | |
| | | |
| [Appeal by S.F., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  August 29, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD23913547

### *Appearances:*

Scott J. Friedman, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Appellant S.F., mother of J.F., a minor child, appeals the juvenile court's grant of permanent custody of J.F. to the Cuyahoga County Division of Child and Family Services (hereinafter, "CCDCFS" or the "Agency").  Mother alleges the juvenile court's decision was against the manifest weight of the evidence and that

she received ineffective assistance of counsel during the proceedings. Because we find that the juvenile court made its decision to award permanent custody based upon clear and convincing evidence and that Mother did not receive ineffective assistance of counsel, we affirm the judgment.

## RELEVANT FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 1, 2023, the Agency filed a complaint requesting a disposition of permanent custody of J.F. who was born exposed to cocaine only two days prior. On that same date, the Agency filed a motion for predispositional temporary custody of J.F. and, following a hearing, J.F. was ordered placed in the emergency temporary care and custody of CCDCFS. He was thereafter placed in foster care.

{¶ 3} The adjudicatory hearing on the Agency's complaint was held on February 28, 2024. Mother appeared at the hearing. The Agency moved to amend the complaint, and Mother entered stipulations to the amended complaint that alleged that J.F. was born exposed to cocaine, Mother needed to maintain sobriety, Mother needed to address her mental health issues, and Mother needed to obtain stable and appropriate housing. After the stipulations were entered, J.F. was found to be abused and dependent. The juvenile court also determined at the hearing that "the Agency has made reasonable efforts to prevent the removal, eliminate the continued removal, or to make it possible for the child to return home." The juvenile court continued the case for a dispositional hearing.

{¶ 4} The dispositional hearing was held on March 4, 2024, at which the juvenile court incorporated the evidence entered at the February 28, 2024 hearing, accepted into evidence a copy of a felony indictment then pending against Mother, and heard testimony from CCDCFS worker Everett Williams, Mother, and the guardian ad litem ("GAL") for J.F.

{¶ 5} Williams testified that the Agency received an abuse complaint that J.F. was positive for cocaine at birth. He testified that a case plan was developed and Mother was referred for assessment at New Visions. Mother did not comply with the referral. He stated that after his involvement with the case, the Agency contacted Mother five times after the referral and Mother agreed to comply with services, but never did so. A visitation schedule was put in place; however, Mother was arrested and jailed before the visitation could take place.

{¶ 6} Williams further identified the felony indictment for which Mother was then incarcerated and there was no timeline for her release. Williams also testified that Mother had a prior child, E.F., who was placed in permanent custody for similar reasons as the current case. Williams also testified that several family members were contacted about caring for J.F., but none were able to do so. Williams stated that because of Mother's history and the persistence of the issues that led to the removal of a child in the past, the Agency sought permanent custody of J.F.

{¶ 7} Mother testified that she did go for an assessment for treatment, but because they wanted a urine sample and she did not want to wait for hours, she did

not stay. She testified on cross-examination that she did not follow up with the referral. She also testified that while in jail she was addressing her mental health issues with medication and explained to the juvenile court that she was more mature and ready to be a parent to J.F.

{¶ 8} The GAL submitted a report to the juvenile court and testified that she was worried about continuing the case because Mother's timeline for release was uncertain and there was no ability to place J.F. with family.

{¶ 9} On March 4, 2024, the juvenile court found in favor of the Agency on its amended complaint and granted it permanent custody of J.F. In its journal entry, the juvenile court made the following findings:

> [T]he Court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the child and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.
>
> . . . [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> . . . [N]otwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the Mother and Alleged Father have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
>
> Mother has chronic mental illness and chemical dependency that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the Court holds the hearing in this matter.
>
> Alleged Father has had no contact with the Agency.
>
> Mother has neglected the child between the date of the original complaint was filed by failure to regularly visit, communicate, or support the child.

Alleged Father has neglected the child between the date of the original complaint was filed by failure to regularly visit, communicate, or support the child.

Mother has demonstrated a lack of commitment towards the child by failing to regularly support, visit, or communicate with the child when able to do so. Mother is currently incarcerated in Cuyahoga County Jail [with one pending felony case and five pending misdemeanor cases].

. . .

Mother has had parental rights terminated involuntarily with respect to a sibling of the child in case AD16913614.

## LAW AND ARGUMENT

### The Juvenile Court's Grant of Permanent Custody Was Not Against the Manifest Weight of the Evidence

{¶ 10} Mother's first assignment of error reads:

The juvenile court erred in terminating the Appellant's parental rights, in violation of her rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

{¶ 11} Mother argues that the juvenile court's findings made in its grant of permanent custody to the Agency were contrary to the evidence presented at the hearing. She alleges the proceedings were done too quickly, arguing that because of this, she could not remedy the problems that led to J.F.'s removal, the Agency could not assist her with services needed for the case plan, and there was no evidence Mother would not be able to provide an adequate permanent home within a year. Further, because the first visitation time was scheduled in February, a short time from the removal date in December, she argues that the evidence could not support the juvenile court's finding she failed to regularly visit, communicate, or support the

child.  The Agency argues that the juvenile court made the requisite findings for a grant of permanent custody and that those findings were supported by clear and convincing evidence

{¶ 12} R.C. 2151.414(B) provides that permanent custody of a child may be awarded to a children services agency if the court finds, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the agency, and (2) that any of the conditions listed in R.C. 2151.414(B)(1)(a)-(e) apply.  Pursuant to R.C. 2151.414(B)(1)(a), permanent custody may be granted where the child is not abandoned or orphaned, has not been in temporary custody for 12 or more months, and "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."  R.C. 2151.414(E) provides that a court must find that a child cannot "be placed with either parent within a reasonable time or should not be placed with either parent" if it finds that any of the following conditions exist:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

. . .

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

. . .

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

R.C. 2151.414(E)(1)-(2), (4), (11).

{¶ 13} In determining the best interests of a child,

the juvenile court is required pursuant to R.C. 2151.414(D)(1) to consider "all relevant factors," including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(a)-(e).

*In re B.M.*, 2020-Ohio-4756, ¶ 12 (8th Dist.). Under R.C. 2151.414(D), the juvenile court is required to consider all the enumerated elements as well as any other relevant factors. "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56.

{¶ 14} When tasked with review of a trial court's application of the clear-and-convincing-evidence burden of proof, we "'examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1 (1887), paragraph two of the syllabus; *In re Z.C.*, 2023-Ohio-4703, ¶ 8. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.* at ¶ 14, citing *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 20.

{¶ 15} The juvenile court found that R.C. 2151.414(B)(1)(a) applied where it determined "[J.F.] has not been in temporary custody of the Cuyahoga County Division of Children and Family Services for twelve (12) or more months of a consecutive twenty-two month period . . . [and J.F.] cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶ 16} In doing so, it found pursuant to R.C. 2151.414(E)(1) that

notwithstanding reasonable case planning and diligent efforts by the [A]gency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the Mother and Alleged Father have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

{¶ 17} The juvenile court found pursuant to R.C. 2151.414(E)(2) that

Mother has chronic mental illness and chemical dependency that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the Court holds the hearing in this matter.

{¶ 18} The juvenile court found pursuant to R.C. 2151.414(E)(4) that

Mother has neglected the child between the date of the original complaint was filed by failure to regularly visit, communicate, or support the child.

{¶ 19} The juvenile court found pursuant to R.C. 2151.414(E)(11) that

Mother has had parental rights terminated involuntarily with respect to a sibling of the child in case AD16913614.

After making any one of these findings, the juvenile court was required to find that J.F. could not "be placed with either parent within a reasonable time or should not be placed with either parent." R.C. 2151.414(E).

{¶ 20} The record revealed there was clear and convincing evidence to support these findings. The Agency made reasonable efforts by putting a case plan in place and contacting Mother on a regular basis for follow through with the case plan. Mother did not follow through with seeking substance abuse treatment or seek mental health treatment and did not remedy the conditions causing J.F. to be placed in Agency custody. There was no evidence that Mother was able to meet J.F.'s basic needs or that she attempted to regularly visit, communicate, or support J.F. after

removal. Additionally, Mother had another child placed into the permanent custody of the Agency for similar reasons as J.F.'s removal and she did not present any evidence she could presently provide a legally secure placement for J.F.

{¶ 21} The record also indicates the trial court considered the factors enumerated in R.C. 2151.414(D)(1) and found that the grant of permanent custody to the Agency was in the best interests of J.F. The evidence in the record supports this finding where J.F. was removed from the hospital after being born exposed to cocaine, Mother had a lengthy history of unaddressed problems with substance abuse and her mental health in the past, Mother did not engage with the case plan implemented after J.F. was removed, and Mother had another child removed from her care in the past for similar reasons. Further, the GAL recommended the grant of permanent custody, citing the facts that Mother had not addressed the problems from the past and that she was currently incarcerated for an indeterminate amount of time.

{¶ 22} Mother argues that the proceedings were held too quickly for her to have made any progress as to the case plan and too quickly to establish she did not regularly support, care for, or visit J.F. However, there is no requirement that the trial court delay proceedings. The record indicates that Mother never attempted to visit J.F. or provide care or support. Instead, it reveals the Agency referred Mother for services, she did not comply with the referral, she failed to schedule any further services, and her history with the Agency showed a failure to address similar substance abuse and mental health. As such, the greater weight of the evidence

established that permanent custody was in J.F.'s best interests and we are not persuaded by Mother's argument that the timing of the proceedings belied the trial court's findings. Accordingly, we cannot say that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the grant of permanent custody should be reversed.

{¶ 23} The first assignment of error is overruled.

### The Record Does Not Show That Mother Suffered Ineffective Assistance of Counsel

{¶ 24} Mother's second assignment of error reads:

The Appellant was denied the effective assistance of counsel, in derogation of her rights under the Sixth Amendment to the United States Constitution, and Article I, Section 10 the Ohio Constitution.

{¶ 25} Ohio courts apply the test for ineffective assistance of counsel used in criminal cases applies for permanent custody cases. *E.g., In re Z.J.,* 2020-Ohio-383, ¶ 20 (8th Dist.). In order to prove ineffective assistance of counsel, the appellant has the burden of proof to show "'(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different.'" *Id.*, quoting *State v. Perez,* 2009-Ohio-6179, ¶ 200.

{¶ 26} Mother argues she received ineffective assistance of counsel because counsel advised her to stipulate to the amended complaint. She further argues that counsel should have requested a continuance of the dispositional and adjudicatory

hearings because she was incarcerated and the hearings occurred within a relatively short amount of time from J.F.'s removal, which time frame did not allow Mother to show compliance with the case plan. The Agency argues Mother has not shown ineffective of counsel because she did not, and cannot, show she suffered prejudice by counsel's performance.

{¶ 27} "[T]he decision to enter into a stipulation, including the stipulation of fact, is a tactical decision." *In re J.H.*, 1998 Ohio App. LEXIS 3923, *14 (6th Dist. Aug. 28, 1998), citing *State v. Green*, 66 Ohio St.3d 141, 148 (1993). "Absent a showing that counsel failed to research the facts or the law, or that he was ignorant of a crucial defense when he or she made a tactical choice, a reviewing court will defer to counsel's judgment in the matter." *Id.*, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). In this case, counsel negotiated amendments to the complaint that did not detail the substance abuse and mental-health issues that were alleged in the original complaint. The juvenile court spoke with Mother and determined she wished to stipulate to the amended complaint. Additionally, Mother has not demonstrated on appeal that, had she not entered the stipulations, the Agency would not have been able to present evidence to establish the allegations in the complaint so that the result of the adjudicatory hearing would have been different, especially where the Agency alleged in the complaint that J.F. was born exposed to cocaine, a fact readily provable and a condition that would make J.F. an abused child pursuant to R.C. 2151.031(D). *In re Blackshear*, 90 Ohio St.3d 197, 200 (2000).

{¶ 28} As to a delay of the dispositional hearing, Mother challenges the findings of the juvenile court arguing that had she been given a continuance, she could have visited J.F., found suitable housing, and addressed her substance abuse and mental health issues. However, Mother has not shown that a continuance would have been granted or that even with a continuance, she would be able to resolve the issues that led to J.F.'s removal, especially considering her history with the Agency and longstanding substance abuse and mental-health issues.

{¶ 29} In light of the record before us, we cannot conclude that because of counsel's advice to stipulate to the amended complaint and decision not to request a continuance of the hearings that there was a reasonable probability the result of the proceedings would have been different.

{¶ 30} The second assignment of error is overruled.

## CONCLUSION

{¶ 31} The juvenile court's grant of permanent custody was not against the manifest weight of the evidence. The juvenile court's finding that J.F. could not be placed with Mother within a reasonable time or should not be placed with Mother pursuant to R.C. 2151.414(E) was based on clear and convincing evidence. The Agency engaged in reasonable case planning and diligent efforts, and Mother failed to substantially remedy the conditions causing J.F. to be removed. Mother has chronic mental illness and chemical dependency that is so severe that it made her unable to provide an adequate permanent home. Mother neglected J.F from the date of the original complaint to the dispositional hearing date, and Mother had

parental rights terminated involuntarily with respect to a sibling of J.F. Pursuant to R.C. 2151.414(B), the juvenile court's finding that permanent custody was in J.F.'s best interests was supported by evidence that Mother had a lengthy history of ongoing unaddressed problems with substance abuse and mental health, did not engage with the case plan implemented after J.F. was removed, and had another child removed from her care in the past for similar reasons.

{¶ 32} Mother did not show that she received ineffective assistance of counsel where she could not show that the decision to stipulate to an amended complaint at the adjudicatory hearing was anything more than a tactical decision or that the outcome of the hearing would have been different had she not stipulated. Further, Mother did not show that had counsel requested a continuance, it would have been granted or that the outcome of the proceeding would have been different.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

LISA B. FORBES, J., and
SEAN C. GALLAGHER, J., CONCUR