[Cite as *In re L.H.*, 2025-Ohio-1259.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE L.H. | : | |
| | : | No. 114187 |
| Minor Child | : | |
| | : | |
| [Appeal by Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 10, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-24-901216

***Appearances:***

Scott J. Friedman, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother ("Mother") appeals the juvenile court's decision placing her child, L.H. (d.o.b. 12/14/2020), in the temporary custody of the Cuyahoga County Division of Children and Family Services ("CCDCFS").[1]

---

[1] To date, L.H.'s father ("Father") has not appealed the juvenile court's temporary custody determination. Therefore, this appeal addresses the parental rights and responsibilities of Mother to L.H. only.

## I.  Facts and Procedural History

{¶ 2} CCDCFS filed a complaint for abuse, dependency, and temporary custody of L.H. in February 2024 along with a motion for predispositional temporary custody.  The complaint and affidavit attached to the motion alleged that L.H. was present when Mother held a gun to her son's head, a police investigation regarding the incident was ongoing, and the safety plan placed on L.H. was no longer viable as a result.  The complaint also claimed that Mother had mental-health and anger-management issues, which affected her ability to provide appropriate care for L.H.  The complaint further alleged that Mother and Father were involved in a domestically violent relationship.[2]

{¶ 3} An emergency custody hearing was held before a juvenile court magistrate.  Mother and Father denied the allegations of the complaint and objected the CCDCFS' motion.  Jaclyn Fien ("Fien"), a CCDCFS social worker, testified that the matter came to CCDCFS' attention because Mother held a gun to her 13-year-old son's head and was "paranoid about things going on around her home." (Feb. 8, 2024, tr. 10.)  L.H. was in another room of Mother's home when this incident occurred.  As a result of its investigation, CCDCFS had concerns regarding Mother's mental health and anger management.  Fien explained that Mother's mental-health concerns directly placed L.H. at risk because "a lot of her actions are just unpredictable":

---

[2] While L.H.'s father had not established paternity at the time of this filing, paternity was later established.

She flies off the handle very easily, and the fact that she just pointed a gun at her son's head for basically no reason.

. . .

[T]he concern is that [L.H. is] also 3. She's not able to protect herself. Yes, she talks, but she's not able to remove herself from a dangerous situation. So, you know, mom flies off the handle and [L.H. is] present. I mean, that's a concern. And there are concerns that she is also like yelling at [L.H.] a lot.

(Feb. 8, 2024, Tr. 16-17.) Fien further testified that there were past domestic-violence concerns between Mother, the alleged victim, and Father. Fien advised that while two different safety plans were made to prevent L.H.'s removal, they were no longer viable because Mother and Father were no longer in agreement. Despite these concerns, Fien acknowledged that Mother completed a mental-health assessment and was willing to attend counseling. Fien also advised that L.H. never appeared to be in distress or discomfort and was healthy. After hearing Fien's testimony and noting that the case "was not an easy one," the juvenile court magistrate granted predispositional emergency temporary custody to CCDCFS.[3] (Feb. 8, 2024, tr. 36 and Magistrate's Order.) The juvenile court affirmed, approved, and adopted the magistrate's order. (Journal Entry, Feb. 23, 2024.)

{¶ 4} In May 2024 an adjudication hearing was held before a different magistrate on CCDCFS's complaint for abuse, neglect, dependency, and temporary custody. CCDCFS orally moved to amend the complaint, and the juvenile court

___

[3] Mother filed an appeal, pro se, to the emergency temporary custody order. This court dismissed the case sua sponte for lack of a final appealable order. *See In re: L.E.H.*, 8th Dist. Cuyahoga No. 113728.

granted its motion. The amended complaint alleged that Mother's older child reported that he was in her home when she held a gun to his head and a case was pending in the municipal court as a result. The amended complaint also asserted that CCDCFS had concerns regarding Mother's mental health and recommended services, including counseling, and an anger-management assessment. The amended complaint further alleged that Mother and Father had a domestically violent relationship that affected their communication around the children, which needed to be addressed. Finally, the amended complaint advised that an existing safety plan was formalized, requiring that Mother and Father have supervised visits with L.H.

**{¶ 5}** At the adjudication hearing, the trial court specifically asked both Mother and Father, "Do you understand that if I accept your admission to the allegations in this Amended Complaint, that I can adjudge [L.H.] to be abused, neglected and/or dependent?" (May 1, 2024, tr. 8.) Mother and Father stipulated to the amended complaint's allegations, entered admissions, and indicated their understanding that L.H. could be adjudicated abused, neglected and/or dependent. Based on the admissions of Mother and Father, the magistrate found that L.H. was an abused, neglected, and dependent child. Following the magistrate's ruling, Mother's counsel stated:

> I would just interject prior to finishing this hearing that my client did review the allegations and does admit that the allegations as written are true today, although does not feel that these allegations would determine that her child is abused and neglected, although understands that dependency would be valid according to the

allegations as written. I'll leave it to the Court's discretion to make that decision. I just wanted to make the Court aware of that based on her understanding.

*Id.* at 12. On May 1, 2024 the magistrate issued a decision finding that the allegations of the amended complaint were proven by clear and convincing evidence and that a danger existed to L.H. based on Mother and Father's admissions. Accordingly, the magistrate recommended that L.H. be adjudicated abused, neglected, and dependent.

{¶ 6} A dispositional hearing was held before the magistrate the next day. Camile Williams ("Williams"), a CCDCFS extended-service worker assigned to L.H., testified that the family's case plan established a permanency goal of reunification and identified mental-health and anger-management services for Mother. Mother completed a mental-health assessment and ongoing mental-health services were recommended. However, Mother did not agree with the assessment's results and a referral was made to complete a dual mental-health and substance-abuse assessment. Williams advised that CCDCFS initially requested that Mother complete a random urine screen to rule out any issues due to Mother's history with substance abuse, but Mother refused to complete the screening. At one time, Mother was also actively engaged in anger management, which was recommended based on the alleged incident with Mother's older child and her "display[ of] explosive behavior" with Williams during a visit with L.H. (May 2, 2024, tr. 33.) After describing Mother's partial compliance with the case plan and engagement in some services, Williams advised that Mother did not complete a portion of the dual

assessment and was not currently engaged in ongoing mental-health or anger-management services because she did not have active insurance. Williams testified that she could explore other options with Mother. Williams also noted that she planned to add a parenting component to Mother's case plan, which Mother had already engaged in. Finally, Williams believed a survivor's course for domestic violence would benefit Mother.

{¶ 7} Williams advised that Mother had supervised visits with L.H. for two hours a week. Based on Williams's observations of the visits, they were "going very well" and Mother was "always prepared": "[S]he typically br[ought] snacks and activities and she engage[d] with [L.H.] for the entire time." (May 2, 2024, tr. 18.) Mother also had appropriate housing, and there were no concerns regarding her physical ability to care for L.H. However, Williams advised that CCDCFS was unable to support L.H. returning to Mother with protective supervision or oversight at that time, explaining, "We would like to see compliance with the mental health, the anger management, the substance abuse concerns and follow-through with the domestic violence survivor's course." (May 2, 2024, tr. 19.) L.H. was placed with paternal relatives, whom she had bonded with, and was "doing well" and "fit[ting] right in." (May 2, 2024, tr. 21.)

{¶ 8} Fien also offered testimony at the dispositional hearing. Fien advised that she previously interacted with the family after CCDCFS received a referral in October 2023 that Mother and Father had gotten into an argument, Mother felt threatened, and Mother "pulled out a gun on him." (May 2, 2024, tr. 65.) Fien

advised that it was unknown whether L.H. was present at the time. Fien also acknowledged that it was her understanding that the gun was used "as a form of self-defense." (May 2, 2024, tr. 68.)

{¶ 9} Lastly, L.H.'s guardian ad litem ("GAL") discussed his filed report and recommendation. After observing a visit between Mother and L.H., GAL stated that he had no concerns regarding Mother's ability to parent L.H. and it was obvious that L.H. loved Mother. However, GAL advised that while he had not seen anything inappropriate between Mother and L.H., he believed Mother would benefit from anger or behavioral management and a domestic violence survivor's class. GAL expressed concern regarding Mother and Father's domestically violent relationship, noting that it affected their communication around L.H., who could not adequately defend herself. Noting allegations made in this case and another, GAL advised that he believed it was in L.H.'s best interest to be placed in the temporary custody of CCDCFS "because I simply have too many concerns here, and I guess the top one is of the domestic violence." (May 2, 2024, tr. 78.)

{¶ 10} On May 6, 2024, the magistrate issued another decision recommending that L.H. be committed to the temporary custody of CCDCFS. The magistrate found that L.H.'s continued residence in or return to Mother's home was contrary to L.H.'s best interest at the time. The magistrate further found that CCDCFS made reasonable efforts to prevent or eliminate removal or make return possible. However, Mother needed to complete a substance-abuse, mental-health, and anger-management assessments and follow all recommendations. Mother and

Father also needed to complete domestic violence counseling and submit to drug testing. The magistrate also noted that L.H. was placed with a relative. The magistrate's decision approved the case plan and ordered the matter to be set for a review hearing in January 2025.

{¶ 11} Following the hearing, Mother filed objections to the May 1, 2024 magistrate's decision only, challenging the magistrate's abuse and neglect finding. Therein, Mother argued that "the agreement to amend the complaint was made with the prosecutor with the understanding that [L.H.] would only be requested to be found dependent, not abused or neglected." (Objection to Magistrate's Decision, May 9, 2024). Mother did not object to the magistrate's dependency finding or temporary custody recommendation. Mother's counsel subsequently withdrew from the case, and Mother filed numerous pro se motions, including motions to "dismiss the complaint/for an emergency hearing," "enforce services," and "withdraw plea/agreement."

{¶ 12} On July 28, 2024, the juvenile court issued two judgment entries following an independent review of the matter. In one journal entry, the juvenile court overruled Mother's objections and affirmed, approved, and adopted the May 1, 2024 magistrate's decision adjudicating L.H. abused, neglected, and dependent. In the other journal entry, the juvenile court affirmed, approved, and adopted the May 6, 2024 magistrate's decision committing L.H. to the temporary custody of CCDCFS.

{¶ 13} Following the issuance of these orders, Mother filed a notice of appeal and motion for appointment of counsel, pro se. This court granted Mother's motion and appointed counsel. Mother, with the assistance of counsel, raises two assignments of error for review.

**Assignment of Error No. 1**

The juvenile court erred by placing L.H. under the temporary custody of CCDCFS, in violation of Mother's rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution, because the evidence did not support the court's finding that the child was abused, neglected, or dependent.

**Assignment of Error No. 2**

The juvenile court erred by placing L.H. under the temporary custody of CCDCFS, in violation of Mother's rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution, because the evidence did not support the award of temporary custody.

## II. Law and Analysis

### A. Plain Error

{¶ 14} As an initial matter, we note that both of Mother's assignments of error contemplate judgment entries adopting a magistrate's findings of fact and conclusions of law. Juv.R. 40(D)(3)(b)(iv) provides, "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law . . ., unless the party has objected to that finding or conclusion . . . ." Moreover, "'[i]t is well-established that failure to object to an issue in the lower court waives a party's right to challenge that issue on appeal absent plain error.'" *In*

*re M.C.*, 2023-Ohio-3979, ¶ 35 (8th Dist.), quoting *In re De.D.*, 2020-Ohio-906, ¶ 13 (8th Dist.).

{¶ 15} In civil cases, including juvenile court proceedings,

> the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123 (1997). Thus, a reviewing court must proceed with "the utmost caution" when applying the plain-error doctrine and strictly limit its use to "those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of and public confidence in judicial proceedings." *Id.* at 120.

## B. Adjudication

{¶ 16} In her first assignment of error, Mother argues that her stipulations to the amended complaint do not support the juvenile court's abuse, neglect, and dependency findings.

{¶ 17} R.C. 2151.35(A)(1) provides, "If the court at the adjudicatory hearing finds from clear and convincing evidence that the child is an abused, neglected, *or* dependent child, the court shall proceed . . . to hold a dispositional hearing and hear the evidence as to the proper disposition to be made under section 2151.353 of the Revised Code." (Emphasis added.) R.C. 2151.353(A)(2)(a) authorizes a court to

commit a child to the temporary custody of a public children services agency if that child is adjudicated "abused, neglected, *or* dependent." (Emphasis added.) Thus, the juvenile court could grant temporary custody of L.H. to CCDCFS so long as one adjudicatory finding — abuse, neglect, *or* dependency — was established by clear and convincing evidence.

{¶ 18} Our review of the record reveals Mother's understanding that her admissions at the adjudication hearing could result in abuse, neglect, and/or dependency findings. While Mother did not believe those admissions amounted to abuse or neglect, she conceded that "dependency would be valid according to the allegations as written." Moreover, Mother only challenged the magistrate's abuse and neglect findings in her objections to the May 1, 2024 magistrate's decision; she did not raise any issues or arguments regarding the magistrate's dependency finding. Rather, Mother indicated in her objections that "the agreement to amend the complaint was made with the prosecutor with the understanding that [L.H.] would only be requested to be found dependent, not abused or neglected."

{¶ 19} Even if we agree with Mother regarding the juvenile court's adoption of the magistrate's abuse and neglect findings, she did not object and arguably stipulated to the magistrate's dependency finding. In her appellate briefs, Mother does not claim that the juvenile court plainly erred in adjudicating L.H. dependent. Nor does Mother engage in a plain-error analysis. Because Mother waived any arguments regarding the juvenile court's dependency finding and fails to argue that the juvenile court plainly erred in adjudicating L.H. dependent on appeal, her first

assignment of error is overruled. *See, e.g., In re N.S.*, 2023-Ohio-3983, ¶ 20 (8th Dist.) (disregarding and overruling an assignment of error where the issue was not raised before the juvenile court and appellant failed to construct a plain-error argument on appeal), and *In re De.D.*, 2020-Ohio-906, at ¶ 14 (8th Dist.) (holding that appellant waived the right to challenge certain issues when she failed to object to those issues prior to appeal and made no argument that this was an extremely rare case involving exceptional circumstances).

### C. Temporary Custody Disposition

{¶ 20} In her second assignment of error, Mother argues that the evidence did not support the juvenile court's award of temporary custody to CCDCFS.

{¶ 21} R.C. 2151.353(A) provides:

If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

(1) Place the child in protective supervision;

(2) Commit the child to the temporary custody of any of the following:

(a) A public children services agency;

(b) A private child placing agency;

(c) Either parent;

(d) A relative residing within or outside the State;

(e) A probation officer for placement in a certified foster home;

(f) Any other person approved by the court.

In this case, L.H. was previously adjudicated abused, neglected, and dependent and the juvenile court awarded temporary custody to CCDCFS pursuant to R.C. 2151.353(A)(2)(a).

{¶ 22} To award temporary custody, a juvenile court must find that the disposition is supported by a preponderance of the evidence. *In re A.S.*, 2018-Ohio-1085, ¶ 18 (8th Dist.), citing *In re Ka.C.*, 2015-Ohio-1158, ¶ 20 (8th Dist.). A "preponderance of the evidence" is defined as "'"evidence that is more probable, more persuasive, or of greater probative value."'" *Id.*, quoting *In re C.V.M.*, 2012-Ohio-5514, ¶ 7 (8th Dist.), quoting *In re D.P.*, 2005-Ohio-5097, ¶ 1 (10th Dist.).

{¶ 23} In determining the appropriate disposition, the court's primary concern is the best interest of the child. *In re K.E.*, 2022-Ohio-3333, ¶ 17, citing *In re Ka.C.* at ¶ 19. "'A trial court has substantial discretion in weighing the considerations involved in making the determination regarding a child's best interest[.]'" *Id.*, citing *In re S.M.*, 2011-Ohio-6710, ¶ 3 (2d Dist.). When considering temporary custody as a dispositional alternative following an adjudication of abuse, neglect, or dependency, there is no specific test or criteria that must be applied to determine what is in the child's best interest. *In re M.C.*, 2023-Ohio-3979 at ¶ 43, citing *In re Q.S.*, 2023-Ohio-712, ¶ 119 (8th Dist.).

{¶ 24} Finally, this court has repeatedly held that "'[a]n award of temporary custody to a public . . . children's services agency is substantially different from an award of permanent custody where parental rights are terminated.'" *Id.*, quoting *In re Ka.C.* at ¶ 20; *In re K.E.* at ¶ 19. Despite any loss of temporary custody, the child's

parents retain residual parental rights, privileges, and responsibilities and may regain custody. *In re K.E.* at ¶ 19.

{¶ 25} Again, we note that Mother did not object to the May 6, 2024 magistrate's decision recommending temporary custody be granted to CCDCFS and does not argue on appeal that the juvenile court's adoption of that recommendation amounted to plain error. However, even if Mother's challenge to the trial court's temporary custody determination was properly raised, we decline to find that the trial court plainly erred in granting temporary custody to CCDCFS.

{¶ 26} The evidence demonstrates that while Mother met certain case-plan objectives, she had not completed all of them; was not currently involved in ongoing mental-health and anger-management services; and could benefit from parenting and domestic-violence classes. The evidence further reveals that these services were necessary due to domestic-violence concerns between Mother and Father; Mother's pending charges stemming from an incident where she allegedly held a gun to her older child's head, the catalyst for the removal of L.H.; and Mother's explosive behavior with CCDCFS workers. Thus, evidence was presented that some concerns and issues remained and needed to be further explored before L.H., a young child who was unable to defend or remove herself from a volatile situation, could be safely returned to Mother's custody. Finally, the evidence demonstrates that L.H. was doing well in her placement with paternal relatives and that temporary custody was in L.H.'s best interest. Based on the foregoing, we cannot say that this is the extremely rare case where exceptional circumstances require the application of the

plain-error doctrine to prevent a manifest miscarriage of justice and material adverse effect on the character of and public confidence in judicial proceedings.

{¶ 27} Accordingly, we overrule Mother's second assignment of error.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
EILEEN T. GALLAGHER, J., CONCUR