[Cite as *In re J.H.*, 2025-Ohio-4593.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE J.H., JR., ET AL. | : | |
| | | No. 115038 |
| Minor Children | : | |
| | | |
| [Appeal by D.W., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 2, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD24912499, AD24912500, AD24912501,
AD24912502, and AD24912503

***Appearances:***

A. E. Boles LLC and Alisa Boles, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

DEENA R. CALABRESE, J.:

{¶ 1} Appellant D.W. ("mother") appeals five judgments of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), entered March 19, 2025. The juvenile court judgments granted permanent custody of mother's five children, Na.H., Ni.H., Joe.H., S.H., and Jos.H. ("the children"), to the appellee Cuyahoga County Division of Children and Family Services ("CCDCFS" or

"the agency") pursuant to R.C. 2151.353(A)(4), thereby terminating mother's parental rights.[1] After reviewing the facts of the case and pertinent law, we affirm the juvenile court's judgment.

## I. Procedural History and Facts

{¶ 2} The record reflects that mother's history with the agency stretches back to 2016. As discussed below, all five children were previously adjudicated to agency custody for issues similar to those leading to their removal in this case. The older three children had been removed from mother's care on two prior occasions, and the younger two on one prior occasion.

{¶ 3} On November 18, 2024, the agency filed a complaint alleging that mother's children were neglected and dependent and requesting a dispositional order of permanent custody to the agency. On December 11, 2024, the children were removed from the home they shared with mother and their father, J.H. ("father"), and committed to the emergency custody of the agency.

{¶ 4} Mother appeared with counsel on January 15, 2025, and admitted to the allegations as amended the same day, including allegations pertaining to (a) meeting the nutritional and hygienic needs of the children; (b) keeping the home in a "clean and appropriate condition" and making necessary repairs; and (c) meeting the educational and medical needs of the children, including ensuring that they attended school and took prescribed medication. Mother also admitted

---

[1] The juvenile court also terminated the parental rights of the children's father. He is not a party to this appeal.

that three of the children "were previously adjudicated and committed [to] the temporary custody of CCDCFS on two separate occasions due to a lack of basic needs" and that the remaining two children "were also previously adjudicated and committed to the temporary custody of CCDCFS, likewise due to a lack of basic needs and as it relates to [father's] mental health issues." The court scheduled trial on the dispositional request for permanent custody for February 18, 2025. On February 14, 2025, mother filed her witness and exhibit list.

{¶ 5} The parties appeared with counsel on February 18, 2025, for the dispositional trial. At the outset, however, mother argued through counsel that some of the children had expressed a desire to come home, which conflicted with the guardian ad litem's ("GAL") recommendations, and that mother was continuing to work on a case plan with the goal of reunification. Mother requested that separate counsel be appointed for the children and that the dispositional trial be continued.

{¶ 6} The agency indicated it was "prepared to move forward on [its] disposition for permanent custody today" and asked "that we move forward today." (Feb. 18, 2025 tr. 6.) The agency requested that if the juvenile court granted a continuance, the trial be reset within 45 days because "we've already held adjudication." (Feb. 18, 2025 tr. 6.) The juvenile court noted that "an extension may be taken up to 45 days," but that "[i]t could be something less." (Feb. 18, 2025 tr. 7.) After discussion with the GAL, and after inquiring what efforts the agency was making to prevent the continued removal of the children, the juvenile court granted the requested continuance and rescheduled the dispositional trial for March 18,

2025.  It indicated on the record that "[n]o further continuances will be granted." (Feb. 18, 2025 tr. 16.)  The juvenile court's journal entry, docketed the same day, likewise indicates that "[n]o further continuances will be granted."

{¶ 7} On February 19, 2025, mother filed a motion to appoint separate counsel for the children.  The court held a hearing on the motion on February 26, 2025.  At the hearing, mother argued, inter alia, that "since we are proceeding to a permanent custody trial," the appointment of separate counsel was warranted "in an abundance of caution."  (Feb. 26, 2025 tr. 5.)  After hearing testimony, the juvenile court appointed separate counsel for one child only, Na.H.  (Feb. 18, 2025 tr. 25.)  The GAL, however, subsequently moved for appointment of counsel for the four remaining children.  The juvenile court granted the motion by entries dated March 4, 2025.  As a result, all of the children were thereafter represented by counsel.

{¶ 8} On March 11, 2025, the agency filed a motion for leave to amend disposition prayer from permanent custody to CCDCFS to temporary custody to CCDCFS.  The juvenile court took no action on the motion prior to the dispositional trial, which proceeded as scheduled on March 18, 2025.

{¶ 9} The juvenile court opened the dispositional trial by stating, "We are here upon the Agency's dispositional prayer for permanent custody." (Mar. 18, 2025 tr. 4.)  While the agency immediately referenced its recent motion to amend the dispositional prayer to request temporary custody, asking that the juvenile court

grant the motion, the court's response was only to say, "You may call your first witness." (Mar. 18, 2025 tr. 5.)

{¶ 10} The agency called caseworker Devany Wilson. She testified that the parents had not permitted her to access the home, stating that she asked mother approximately once a week for access to the home, but mother "usually reschedules the day before or the day of." (Mar. 18, 2025 tr. 12.) When the children came into the agency's care in December 2024, "[i]t was noted by the short term worker that they weren't clean and they didn't have appropriate clothing." (Mar. 18, 2025 tr. 13.)

{¶ 11} Wilson testified regarding the case plan developed to address mother's problems with parenting, domestic violence, mental health, substance abuse, supervision, and provision of basic needs for the children. Wilson noted that mother seemed "overwhelmed," that there was a "lack of supervision," that the children were not attending school or doctor's appointments, and indeed that the children were reported to be "wandering outside asking strangers for food, money." (Mar. 18, 2025 tr. 7-8.) The children "were missing like weeks of school, months, if you add all the dates up." (Mar. 18, 2025 tr. 8.) They were "observed jumping off of the house and just wandering through the neighborhood." (Mar. 18, 2025 tr. 8.) When the children came into agency custody in December 2024, "they weren't clean and they didn't have appropriate clothing." (Mar. 18, 2025 tr. 13.)

{¶ 12} With respect to meeting the "basic needs" objective of the case plan, mother "[hadn't] done anything yet." (Mar. 18, 2025 tr. 13.) Wilson had essentially been refused access to the home, even after repeated requests, and was therefore

unable "to verify that the children have beds, appropriate clothing, there's food in the home, that there is no safety or dangerous things in the home." (Mar. 18, 2025 tr. 14.)

{¶ 13} There had also reportedly been a domestic violence incident between mother and father in the presence of the children.[2] Furthermore, because of suspicions that mother and father might be taking the children's prescription medications, both had been asked to submit to a drug screen in February 2025. Neither mother nor father had complied by the date of the dispositional trial. Father had likewise failed to engage with case-plan services, reportedly telling Wilson that he was "not willing to do any classes where he has to sit for a long period of time." (Mar. 18, 2025 tr. 17.) He also failed to address domestic-violence issues with his probation officer.

{¶ 14} Wilson also testified concerning mother's weekly supervised visits with the children. When they met at a community library, she described it as "more like the kids . . . just running around and playing on the playground or to places inside." Mother did not read with them, do homework with them, or engage in other activities with them. (Mar. 18, 2025 tr. 20-21.) Instead, the children were "just doing their own thing," with mother lacking any "control of the visit." (Mar. 18, 2025 tr. 21-22.) Father was even less engaged during supervised visits, which he attended

---

[2] At the adjudicatory hearing, father's probation officer testified that he was "not in any compliance, whatsoever," with the terms of his probation, having failed to engage in anger-management classes. (Jan. 15, 2025 tr. 16-17.)

much less frequently than mother, sometimes not even "staying the whole time." (Mar. 18, 2025 tr. 22.)

{¶ 15} Social worker Wilson further testified that the agency had been unsuccessful in identifying an appropriate relative caregiver for the children. The oldest child had threatened to run away or harm himself and was therefore placed in a residential setting. Wilson testified that he still had educational difficulties, but was attending school daily, engaging in group therapy, and taking his ADHD medication. The remaining four children had been placed in a foster home and had shown improvement, including regular school attendance. Wilson testified that those children still struggled with reading and that seven-year-old Jos.H. still "doesn't know his letters." (Mar. 18, 2025 tr. 23.) Mother's counsel cross-examined Wilson, as did the GAL and counsel for Na.H.

{¶ 16} After the agency rested, mother did not call any witnesses. The GAL orally amended his recommendation, asking that the juvenile court provide mother with more time to complete her case plan. As the agency now argues, this recommendation contrasted sharply with his written recommendation of permanent custody to the agency. In his report, the GAL wrote that the parents "have a long history of not being able to provide for the basic needs of the children." He noted that the "housing is deplorable, unsanitary, unsafe, and not fit for human habitation." The GAL commented on the "serious problem with the children not attending school," as well as "historic" problems exhibited by the parents that "are long standing and have never been resolved." He observed that the children were

evidently raised with "no rules or boundaries," engaging in behavior that "was out of control because they probably never had structure, rules, or boundaries set by the parents." His report ultimately concluded with the recommendation that the "request for permanent custody be GRANTED."

{¶ 17} On cross-examination, the GAL testified he had been permitted access to the home and repeated his conclusion that it was "deplorable" and "[n]early unlivable." (Mar. 18, 2025 tr. 45-46.) Mother was not allowing the social worker access to the home, however, and father was "doing absolutely nothing at all." (Mar. 18, 2025 tr. 44.) He described father as lying on a couch "unconscious or asleep" during his visit. (Mar. 18, 2025 tr. 44.) Mother, as well as counsel for the children, cross-examined the GAL.

{¶ 18} The juvenile court heard closing arguments. Mother's counsel acknowledged that "this is a permanent custody complaint," but argued "that there has been enough progress to warrant an order of temporary custody." (Mar. 18, 2025 tr. 50 and 52.)

{¶ 19} The juvenile court, still on the record, denied the agency's motion to amend the dispositional prayer and ordered the children placed in the permanent custody of the agency. The juvenile court subsequently journalized an entry in each child's case denying the agency's motion to amend its dispositional prayer, terminating parental rights, and committing the children to the permanent custody of the agency.

## II. Assignments of Error

{¶ 20} Mother presents four assignments of error for our review:

1. The trial court's award of permanent custody and termination of appellant's parental rights is against the manifest weight of the evidence.

2. The trial court erred in not conducting a dispositional hearing within the ninety (90)-day statutory period and more than thirty (30) days after the adjudication.

3. The trial court erred in not allowing Mother more time to complete her case plan where it was not filed within the thirty (30)-day statutory period.

4. The trial court erred by ruling on the substance of the disposition when the prosecutor only requested to be heard on whether the Agency could be granted leave to amend the dispositional prayer, to which all parties were in agreement and when there was no indication that they were proceeding to a full trial at that time.

## III. Analysis

### A. Manifest Weight

{¶ 21} In her first assignment of error, mother argues that the trial court's award of permanent custody to the agency and termination of parental rights was against the manifest weight of the evidence. We recently reiterated that "[a] juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been established." *In re A.M.*, 2024-Ohio-1168, ¶ 15 (8th Dist.), citing *In re B.M.*, 2020-Ohio-4756, ¶ 11 (8th Dist.). When reviewing a manifest-weight challenge, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in

resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20; *see also In re J.F.*, 2024-Ohio-3311, ¶ 14 (8th Dist.).

{¶ 22} "'In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.'" *In re Z.C.* at ¶ 14, quoting *Eastley* at ¶ 21. As further explained in *In re Z.C.*:

> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id*. at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.* at ¶ 14.

{¶ 23} "[W]e will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence." *In re S.H.*, 2019-Ohio-3575, ¶ 25 (8th Dist.), citing *In re N.B.*, 2015-Ohio-314, ¶ 48 (8th Dist.); *see also In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.).

{¶ 24} R.C. 2151.353(A)(4) provides that "[i]f a child is adjudicated an abused, neglected, or dependent child," the court may "[c]ommit the child to the permanent custody of a public children services agency" if the court (1) "determines

in accordance with [R.C. 2151.414(E)] that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent"; and (2) "determines in accordance with [R.C. 2151.414(D)(1)] that the permanent commitment is in the best interest of the child."

{¶ 25} Pursuant to R.C. 2151.414(E), "[i]f the court determines, by clear and convincing evidence . . . that one or more of the [the enumerated] factors exist as to each of the child's parents, the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]"  (Emphasis added.)  The Ohio Supreme Court has stated:

> "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*In re Z.C.*, 2023-Ohio-4703, at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.  Moreover, "[a] juvenile court is only required to find that *one* of [the R.C. 2151.414(E)] factors is met in order to properly find that a child cannot or should not be placed with a parent."  (Emphasis added.)  *In re Y.F.*, 2024-Ohio-5605, ¶ 43 (8th Dist.), citing *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.).

{¶ 26} Here, in accordance with R.C. 2151.414(E) and with respect to each child, the juvenile court found by clear and convincing evidence that "the child cannot be placed with one of the child's parents within a reasonable time and should

not be placed with either parent" upon determining that there was evidence that one or more of the statutory factors exist pursuant to R.C. 2151.414(E)(1) and (4).

{¶ 27} The evidence supported the juvenile court's finding, in accordance with R.C. 2151.414(E)(1), that mother had failed to remedy the conditions leading to the children's placement with the agency. For each child, the juvenile court stated in its final entry that "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." At the conclusion of trial, the juvenile court noted the lack of compliance with the case plan, including the unwillingness to consent to an inspection of the home. The trial testimony supports its conclusion. The GAL described the home as "deplorable," "unsanitary," and "not fit for human habitation." By the time of trial, no evident progress had been made to remedy these conditions, and mother was denying the agency case worker access to the premises. The case worker had therefore been unable to confirm that mother made any progress with respect to meeting the basic needs of the children. The unrebutted testimony established that mother had failed to remedy the conditions leading to the removal of the children.

{¶ 28} The record also supported the trial court's finding that mother had demonstrated a lack of commitment to the children, satisfying R.C. 2151.414(E)(4). For each child, the trial court's final order states that "the parents have

demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." The record indicates that both parents failed to commit to the necessary steps to work towards reunification, including demonstrating the ability to provide for the basic needs of the children. Moreover, mother and father's continued cohabitation was recognized as a barrier to reunification because of his wholly apathetic approach to case-plan services, his minimal supervised visits with the children, and domestic violence concerns. "It is true that persons have the right to associate freely with whom they choose, but the . . . right to associate must become subordinate to the best interests of the children." *In re Holyak*, 2001 Ohio App. LEXIS 3105, *11 (8th Dist. July 12, 2001).

{¶ 29} Our independent review confirms that the juvenile court's determination that one or more of the R.C. 2151.414(E) factors exist is supported by the record. The juvenile court was therefore required to enter a finding that the children cannot or should not be returned to the parents within a reasonable time. *See In re Glenn*, 139 Ohio App.3d 105, 113 (8th Dist. 2000) ("Once a court determines, by clear and convincing evidence one of the enumerated factors exists, the court must enter a finding that the child cannot or should not be placed with either of his parents within a reasonable time.").

{¶ 30} The juvenile court also found by clear and convincing evidence that for all children, "a grant of permanent custody is in the best interests of the child."

"The Ohio Supreme Court has held that 'R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires.'" *In re M.B.*, 2024-Ohio-6028, ¶ 30 (8th Dist.), quoting *In re A.M.*, 2020-Ohio-5102, ¶ 31. When analyzing the best interest of the child, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56.

{¶ 31} The juvenile court's best-interest finding is supported by evidence in the record, and its ultimate conclusion is not against the manifest weight of the evidence. R.C. 2151.414(D)(1)(a) pertains to a child's interactions with and relationships with others, including parents. The testimony reflected that while mother attended supervised visits at a library, she did not read with them, engage in activities, or help them with homework. Instead, they ran around and played as they pleased. Father's supervised visits numbered only half of mother's, and he likewise demonstrated little engagement. In contrast, the record indicated that the children had benefited from the structure provided by a residential placement (with respect to the oldest child) and foster care (with respect to the remaining four children). While the children might wish to reunite with mother and father, "'the mere existence of a good relationship is insufficient. Overall, we are concerned with the best interest of the child, not the mere existence of a relationship.'" *In re K.M.*, 2011-Ohio-349, ¶ 23 (8th Dist.), quoting *In re R.N.*, 2004-Ohio-2560, ¶ 37 (8th Dist.). "This court also has recognized that '[a] child's best interests require permanency

and a safe and secure environment.'" *In re K.M.* at ¶ 23, quoting *In re Holyak*, 2001 Ohio App. LEXIS 3105, at *10 (8th Dist. July 12, 2001).   Indeed, a child's relationship with his or her "biological family" can be "outweighed by [the child's] right to a stable and permanent home."  (Cleaned up.)  *In re K.M.* at ¶ 23.

{¶ 32} The children ranged in age from 12 to seven at the time of the dispositional trial.  With respect to R.C. 2151.414(D)(1)(b), the wishes of the children, expressed directly or through the GAL, the GAL's report indicated that the children were "all either [too] young or not capable of expressing their wishes coherently."  The children's counsel, however, stated at the dispositional trial that they wished to be returned to their parents' care.

{¶ 33} R.C. 2151.414(D)(1)(c) pertains to custodial history.  It is undisputed that the children were all previously adjudicated and committed to agency custody for similar issues in the past, twice with respect to the older three children and once with respect to the younger two children.  The record therefore reflects multiple periods of agency custody.

{¶ 34} R.C. 2151.414(D)(1)(d) concerns a child's need for a legally secure placement and whether such a placement can be achieved without a grant of permanent custody.  As discussed above, the juvenile court's conclusion that the children could not be placed with a parent within a reasonable time or should not be placed with either parent was supported by findings consistent with R.C. 2151.414(E), any of which mandate that legal conclusion.  Furthermore, "a trial court's finding that it cannot or should not place a child with a parent precludes the

court from considering returning the child to Mother's custody." *In re T.S.*, 2024-Ohio-827, ¶ 61 (8th Dist.). The trial court was not required to accede to the agency's request to amend the dispositional prayer to temporary custody, particularly in light of mother's long history of failing to resolve identified issues leading to multiple removals of the children. *In re Ky.D.*, 2024-Ohio-3198, ¶ 52 (8th Dist.) ("Mother has not directed us to any requirement that a child must first be placed in temporary custody before permanent custody may be ordered."). This factor, therefore, favored permanent custody to the agency.

{¶ 35} The agency concedes that R.C. 2151.414(D)(1)(e), which addresses "[w]hether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child," has no application in this matter.

{¶ 36} Following our thorough review of the record, the greater weight of the evidence established that permanent custody was supported by the statutory factors, including at least one of the factors for determining the best interest of the children. The record supports the juvenile court's findings. In addition, mother appears to offer no arguments challenging the juvenile court's findings pursuant to R.C. 2151.414(E)(1) and (4), and her best-interest arguments are unpersuasive. Mother argues, for example, that the children had only recently been removed from mother's care, but neglects to mention that this was the third removal for the three oldest children and the second removal for the two youngest children.

{¶ 37} At the conclusion of trial, the juvenile court noted that the children had benefitted from their current placements, i.e., that "structure has . . . helped

them to be clean, clothed, fed, and educated." (Tr. 54-55.) We cannot say that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the grant of permanent custody should be reversed. Accordingly, we do not find the juvenile court's decision to grant permanent custody of the children to the agency to be against the manifest weight of the evidence. Mother's first assignment of error is overruled.

## B. Timeliness of the Dispositional Trial

{¶ 38} In her second assignment of error, mother claims the trial court erred by failing to conduct the dispositional trial within the 90-day statutory period. We find no merit to this argument.

{¶ 39} R.C. 2151.35(B)(1) states, in pertinent part:

> The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed except that, for good cause shown, the court, on its own motion *or on the motion of any party* or the child's guardian ad litem, may continue the dispositional hearing for a reasonable period of time beyond the ninety-day deadline. This extension beyond the ninety-day deadline shall not exceed forty-five days and shall not be available for any case in which the complaint was dismissed and subsequently refiled.

(Emphasis added.)

{¶ 40} The agency filed its complaint on November 18, 2024. Ninety days from that date was Sunday, February 16, 2025. The following Monday, February 17, 2025, was Presidents' Day, a legal holiday. The dispositional trial was set for the next court day, Tuesday, February 18, 2025. The case was called for trial in a timely fashion. The juvenile court went on the record, indicating that the case was set for dispositional trial that day but acknowledging that based on off-the-record

discussions, mother wished to be heard through counsel. Mother's counsel then immediately stated: "We are asking for a continuance of the disposition hearing today, Your Honor." (Feb. 18, 2025 tr. 5.) As discussed above, the agency indicated it was prepared to move forward with the dispositional trial. The trial court nevertheless acceded to mother's request to continue the trial. The trial court rescheduled the trial for March 18, 2025, well within the 45-day extension limit. The dispositional trial went forward on that date.

{¶ 41} On this record, mother has no grounds to argue that the juvenile court violated the time requirements established by R.C. 2151.35(B)(1). The trial court did not err in this regard. Mother's second assignment of error is overruled.

**C. The Case Plan**

{¶ 42} In her third assignment of error, mother argues that the trial court erred by not allowing her more time to complete her case plan because the agency filed the case plan one day late under the applicable statute. This assignment of error likewise lacks merit.

{¶ 43} Pursuant to R.C. 2151.412(D), the agency "shall file the case plan with the court prior to the child's adjudicatory hearing but no later than thirty days after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care." The agency filed the complaint in this matter on November 18, 2024. Thirty days thereafter is Wednesday, December 18, 2024. The agency did not file the case plan by December 18, but mother acknowledges in her brief that "it was filed only a day after." (Appellant's brief at p. 9.)

{¶ 44} Mother did not raise this issue in the juvenile court at any point, including during the adjudicatory hearing or the dispositional trial. In the case of *In re J.J.*, 2007-Ohio-535 (8th Dist.), as here, the agency "did not file the case plan within 30 days of the date on which the complaint was filed or the date J.J. was placed into foster care." *Id.* at ¶ 31. This court noted that the appellant had "failed to raise this error at the trial court level, thereby waiving it for purposes of appellate review." *Id.* at ¶ 32. "Ohio courts have routinely held that ordinarily, 'an appellate court will not consider any error which the party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been corrected or avoided by the trial court.'" *Id.* at ¶ 32, quoting *In re Miller*, 2005-Ohio-856, ¶ 21 (5th Dist.), citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207 (1982), paragraph one of the syllabus.

{¶ 45} Moreover, as in *In re J.J.*, "even if we decided that appellant had not waived this error, we nevertheless would find that he has failed to establish any prejudicial effect as a result of the late filing of the case plan." *In re J.J.* at ¶ 33. Mother has not argued that she was prejudiced by the fact that the case plan was filed a day late.[3] She also has not argued plain error and therefore cannot rely on a plain-error argument. *See In re N.S.*, 2023-Ohio-3983, ¶ 20 (8th Dist.) (disregarding and overruling assignment of error where issue was not raised at trial-

---

[3] We note that while the agency filed the case plan on December 19, 2024, the plan document indicates that mother appeared in person on December 9, 2024, and signed to acknowledge receipt of the plan that day. This was well within 30 days after the agency filed its complaint. Even if mother had explicitly argued prejudice because of the tardy filing, she cannot demonstrate prejudice on this record.

court level and appellant failed to construct a plain-error argument on appeal); *In re L.H.*, 2025-Ohio-1259, ¶ 19 (8th Dist.) (same).

{¶ 46} With respect to mother's argument that she should have been given more time to work on her case plan, this court has previously stated that "[a]s far as Mother's assertion that the agency moved too quickly, Ohio law authorizes an agency to request an original disposition of permanent custody on a complaint," and that "Mother has not directed us to any requirement that a child must first be placed in temporary custody before permanent custody may be ordered." *In re Ky.D.*, 2024-Ohio-3198, at ¶ 52 (8th Dist.). In addition, mother's argument ignores the history of removals for similar reasons. We agree with the agency that the juvenile court was not required to continue temporary custody to give mother more time to resolve problems she has repeatedly failed to overcome. As one of our sister districts wrote:

> The trial court was not required to deny the children the permanency that they need, especially at such a young age, in order to provide [father] additional chances to prove that he can provide a legally secure permanent placement for the children. To deny appellee permanent custody would only prolong the children's uncertainty and instability. We do not believe that the trial court was required to experiment with the children's best interest in order to give [father] additional chances to prove that he may be able to provide them with a legally secure permanent placement at some undetermined point in the future.

*In re N.S.N.*, 2015-Ohio-2486, ¶ 50 (4th Dist.).

{¶ 47} Mother's third assignment of error is overruled.

### D. Proceeding to Trial on Disposition

{¶ 48} In her fourth assignment of error, mother argues that the juvenile court erred by ruling on the substance of the agency's request for a disposition of permanent custody to CCDCFS rather than ruling on the agency's pending motion to amend. This assignment of error has no merit.

{¶ 49} In the text of the assignment of error itself, mother contends that "there was no indication that they were proceeding to a full trial at that time," i.e., the morning of the dispositional trial. This is contradicted by the record. The juvenile court had already made it clear, both on the record on February 18, 2025, and in its corresponding entry later that day, that the dispositional trial would be continued to March 18, 2025, and that no further continuances would be granted. After a Zoom hearing on February 28, 2025, regarding the appointment of counsel for the children, the juvenile court's journal entry reiterated that the dispositional trial was set for March 18, 2025, and no further continuances would be granted.

{¶ 50} The juvenile court opened the dispositional trial by stating, "We are here upon the Agency's dispositional prayer for permanent custody." (Mar. 18, 2025 tr. 4.) When the agency then noted its recent motion to amend the dispositional prayer to a request for temporary custody, further asking that the juvenile court grant the motion, the juvenile court's response was to tell agency counsel: "You may call your first witness." (Mar. 18, 2025 tr. 5.)

{¶ 51} If there was a time to seek clarification of the scope of proceedings, this was it. Neither mother nor the agency did so. Instead, the agency called social

worker Wilson to the stand, and the court heard testimony. Mother's counsel cross-examined Wilson on substantive matters. As the agency now notes, "[n]o objection or request for clarification as to the nature of the proceedings was made by [mother] or anyone else," and the transcript "demonstrates that all were aware that they were in the middle of a trial on the substantive issues before the court." (Appellee's brief at p. 25-26.)

{¶ 52} After the agency rested, the trial court asked if mother intended to call witnesses. After asking for "[o]ne moment," counsel responded: "No witnesses, your Honor." (Mar. 18, 2025 tr. 41.) This, as well, would have been an opportune moment to address any required clarification regarding the nature or scope of the proceedings. Mother's counsel did not indicate she was not expecting a dispositional trial, but only a ruling on the agency's motion to amend the dispositional prayer. Her choice to call "[n]o witnesses" carried no spoken proviso that this decision flowed from confusion over the nature of the proceedings or a foregone conclusion that the agency's motion to amend would be granted. Counsel did not protest that mother was not prepared to proceed with a dispositional trial. Instead, mother raises such arguments for the first time in her appellate brief, without support in the transcript or elsewhere in the record.

{¶ 53} Mother also fails to note that after all testimony was taken, the parties gave closing arguments. In her closing argument, mother's counsel specifically acknowledged that "this is a permanent custody complaint" and argued against permanent custody, asserting that her client had "earned the request for temporary

custody" and that "there has been enough progress to warrant an order of temporary custody." (Mar. 18, 2025 tr. 50-52.)

{¶ 54} Mother does not claim that proceeding to dispositional trial violated her due-process rights or implicated any other constitutional or statutory concerns. Moreover, she has cited no cases to support the arguments she has made, and we are not obligated to find supporting cases on her behalf. *See Story v. Story*, 2021-Ohio-2439, ¶ 30 (8th Dist.) (appellate court not obligated to construct or develop arguments for appellant or to guess at undeveloped claims); *Strauss v. Strauss*, 2011-Ohio-3831, ¶ 72 (8th Dist.) ("'If an argument exists that can support this assigned error, it is not this court's duty to root it out.'"), quoting *Cardone v. Cardone*, 1998 Ohio App. LEXIS 2028, *22 (9th Dist. May 6, 1998); *Bertalan v. Bertalan*, 2025-Ohio-1443, ¶ 77 (8th Dist.).

{¶ 55} To the extent mother has developed an argument with respect to the juvenile court's denial of the agency's motion for leave to amend, it is clear that this was a matter committed to the court's discretion pursuant to Juv.R. 22(B). A trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter v. Troutman*, 2025-Ohio-366, ¶ 64 (8th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). The agency's motion sought leave to amend the complaint to request a disposition of temporary rather than permanent custody,

but its rationale for the change, which we find confusing at best, was that "Temporary Custody to CCDCFS is an appropriate disposition and is in the children's best interests *as Mother and Father have failed to remedy the conditions leading to the adjudication of the children*." (Emphasis added.) Mother fails to offer any legal argument to support a contention that the trial court's decision to deny the motion for leave to amend was an abuse of discretion. Indeed, we agree with the agency's current stance that it was prudent of the trial court to hear testimony at the dispositional hearing before issuing a decision on the motion for leave to amend.

{¶ 56} Finally, we are unpersuaded by any argument that the juvenile court was required to follow the recommendation of a GAL either as filed or as orally amended during the dispositional trial. "'[A] juvenile court is not compelled to follow the recommendation of the guardian ad litem; the decision of what is in a child's best interest is for the juvenile court upon a consideration of all the evidence presented.'" *In re M.S.K.*, 2023-Ohio-316, ¶ 50 (8th Dist.), quoting *In re C.T.*, 2021-Ohio-2274, ¶ 80 (8th Dist.), citing *In re M.W.*, 2017-Ohio-8580, ¶ 24 (8th Dist.). The trial court expressed skepticism at the GAL's oral amendment, and we agree with the agency that the amendment appeared to stem more from sympathy for mother than the best interests of the children and that the GAL's own testimony at trial undermined any rationale for amending his recommendation to temporary custody. The oral amendment stands in stark contrast to the written report, which notes the long history of inability "to provide for the basic needs of the children,"

problems that "have never been resolved." The written report unequivocally recommended permanent custody to the agency.

{¶ 57} On this record, mother's argument that she and the other parties to the case were unaware that a dispositional trial was taking place has no merit. Nothing supports her contention that the proceeding was framed as merely a hearing on the agency's motion for leave to amend. The juvenile court framed the proceeding at the outset as a trial on the agency's dispositional prayer for permanent custody. The juvenile court took witness testimony. Counsel engaged in cross-examination. The GAL testified regarding his recommendation. At no point did any party object to the taking of witness testimony on the issue of disposition. The agency noted its motion for leave to amend, but there was no suggestion that the trial was limited to that issue and no objection or calls for clarification even when the juvenile court asked for the GAL's recommendation and for closing arguments — where mother explicitly argued *against* a disposition of permanent custody to the agency.

{¶ 58} Mother's fourth assignment of error is overruled.

{¶ 59} The trial court's judgments are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MICHAEL JOHN RYAN, J., CONCURS;
EMANUELLA D. GROVES, P.J., DISSENTS (WITH SEPARATE OPINION)


EMANUELLA D. GROVES, P.J., DISSENTING:

{¶ 60} I respectfully dissent from the majority's resolution of the first assignment of error. I would have found that the juvenile court's decision was not supported by clear and convincing evidence of the kind that would produce in the mind of the trier of fact a firm belief or conviction of the facts sought to be established. I am mindful of the presumption in favor of the finder of fact when weighing the evidence and that an appellate court should not reverse a decision based on the manifest weight of the evidence unless it finds that "the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.* at ¶ 14. Finally, I am not attempting to substitute my judgment for that of the juvenile court. In my view, the weight of the evidence does not clearly and convincingly support the juvenile court's ultimate findings with regard to R.C. 2151.414(E)(1) and (4).

{¶ 61} The evidence failed to establish that mother continuously and repeatedly failed to substantially remedy the conditions that caused the children to

be placed outside of the home, which is evidenced by both the agency's and the GAL's request to forgo a disposition of permanent custody. Notably, the social worker testified that the mother's case-plan goals included parenting, domestic violence classes, supervision i.e., basic needs for the children, mental-health, and substance-abuse treatment. Moreover, the social worker testified that mother reported she was enrolled in Able Counseling; however, while the worker confirmed mother's attendance, she was unable to determine which classes mother was taking. She acknowledged that mother reported taking classes for parenting and domestic violence and that Able Counseling offered those classes. She further testified that there were no active concerns about mother's substance usage or mental-health issues and the agency was removing both goals from the case plan.

{¶ 62} Given the foregoing, the sole remaining issue was whether mother could provide for the basic needs of the children. There was concern about mother's ability to supervise all five children during the two-hour weekly visits. However, mother has not had an opportunity to supervise her children in a home environment since the children were placed in the agency's temporary custody. With respect to the home itself, the social worker had expressed concern about the exterior because she had observed dangerous items in the yard, including saws and other sharp tools. However, she also reported that father told her they were in the process of cleaning the exterior of the house. The only information provided regarding the home's interior came from the GAL who described it as "deplorable, unsanitary, unsafe, and not fit for human habitation." Nevertheless, neither the GAL's written report nor

his testimony at trial described the conditions of the home that led him to make those conclusions. His conclusory statements lacked details to firmly establish that the home was inadequate to meet the basic needs of the children. Based on the foregoing, I would find that the evidence presented did not establish that mother "failed continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside the child[ren]'s home."

{¶ 63} In addition, I would find that the evidence failed to establish that mother "demonstrated a lack of commitment toward the child by failing to adequately support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child" pursuant to R.C. 2151.414(E)(4). Mother's commitment to her children was undeniable. Mother consistently visited with the children, the children were bonded to mother, the oldest expressed a desire to return to mother, and the evidence failed to establish that mother was unwilling to provide an adequate permanent home for the children. The failure to provide additional time for mother to complete the case-plan objectives and the decision to terminate the parent–child relationship at this time was a manifest miscarriage of justice.

{¶ 64} Consequently, I would sustain the first assignment of error, find that mother made substantial gains on her case-plan objectives, and conclude that the termination of her parental rights at this time would be a manifest miscarriage of justice. Accordingly, I would remand the case to the juvenile court for further proceedings.